May it please the Court, Eric Kirsten on behalf of Appellant Deaon Bailes. This case presents a fairly discreet issue. The facts are undisputed, the law is undisputed. Mr. Bailes' argument is that the Court committed error in applying the law to the facts in this case. Mr. Bailes walked away from a halfway house. He was completing a sentence of imprisonment. He was in an unsecure halfway house. He walked away. Under the guidelines, because it was an unsecure halfway house, he's entitled to a four-level reduction of the guidelines unless the government proves that he committed a felony offense while on release or while away from the facility. So there is no dispute that that reduction would apply unless Mr. Bailes committed a felony offense while away from the facility. It was undisputed that Mr. Bailes was at home. A friend called him, said he needed a ride to the Rio Consumnes Correctional Center near Sacramento. Sotomayor, let me just kind of focus you on what I see as the issue in the case and get your response. Your client intended to enter the grounds of the halfway house to take Shaw there. I mean, for whatever purpose, he intended to drop him off. He had drugs in his pocket at the time. He got all the way to the gate. And so isn't the question really whether the court was required to believe his explanation that he just didn't remember that he had the drugs on him? No, Your Honor. We believe that even though he had intended to go to the facility, he acknowledged that he would have dropped Mr. Shaw off in the parking lot, which was within the facility. He didn't have culpable intent. Everyone agreed that his purpose in traveling to the facility was just to drop Mr. Shaw off at the facility. But he intended to go to the facility, and the question is whether he intended to do so while possessing the drugs, not that he didn't have to have a specific intent, did he, in the sense of, I'm going to take these in and give them to somebody there? I think he had to have criminal intent. He had to have a firm design to commit some sort of criminal act. And that wasn't his design here. His design was to drop Mr. Bales off. As they approached the facility, Mr. Bales saw the sheriff that was on the driveway of the facility. He directed the driver to stop. He knew there was a warrant. He didn't want contact with police. He said, stop right here. They stopped outside the boundary of the facility. At that point, Mr. Bales completed what he intended to do. He intended to bring Mr. Shaw to the facility. If he hadn't have been ordered forward onto the grounds by the sheriff at that point, Mr. Shaw could have gotten out of the vehicle, walked into the facility, turned himself in. Mr. Bales could have been on his way. He would have done everything he intended to do without ever having committed the act. He did intend to go onto the grounds originally. Well, I think what his purpose, what everybody agrees, his purpose. It doesn't matter. I didn't ask about his purpose, his ultimate purpose. But he intended to go onto the grounds. He said they would have dropped him off on the grounds. He didn't they didn't make a plan to go onto the ground. He acknowledged that, yes, we would have gone onto the ground. But I think that the significant thing here is that when you look at these cases, all the attempt cases, people had clear plans to commit a crime. All the cases cited by myself, all the cases cited by the government, folks had plans to either commit robberies or do drug deals or engage in some other nefarious activity. That was their purpose. The issue is whether they completed a substantial step in that course. Here, Mr. Bales' actual intent in going there was innocent. It was just to drop his friend off. As, you know, coincidentally, he would have gone onto the facility with the marijuana, but his ---- Sotomayor to believe, isn't it? Well, no, no. Mr. Bales readily admitted that, yeah, we would have dropped him off in the parking lot. But the purpose here is that his intent in driving to the facility was to drop Mr. Shaw off. Once they arrived in front of the facility, they had completed that task. Mr. Bales never made it to the parking lot. He stopped outside the boundary of the facility. The guard waved him forward. He was arrested. So he never made it to that parking lot where he was going to drop Mr. Shaw off. If a janitor comes to clean the facility and carries a pound of heroin in his pocket, can he say, well, I just came here to clean the thing? I didn't intend to commit a crime. Well, I think ---- But he's got the heroin in his pocket, and he knows he's got it in his pocket, and he knows he's in the facility. Well, but I think the inference is if you're bringing a pound of heroin onto a facility, it's to distribute it. Here, Mr. Bales had less than a gram of heroin. So he was just carrying it around, and he was going to clean the place, and he was going to sell it to somebody else somewhere else that night. Well, yeah. He would have committed the offense. He had the intent to sell it under that. I think a more ---- Is that required by this felony? He didn't have to ---- there's no requirement of the sale. No, he had ---- the intent of the statute is to prevent people from bringing contraband into the grounds. Period. Without ---- whether they intend to sell it or use it later or ---- The Court acknowledged that the purpose is to keep it from going into the grounds. The Court found a violation here because it would have been a technical violation. Even though it didn't violate the spirit of the law, which is the introduction of contraband to detainees in the facility, it would violate the spirit, a technical violation, but not a violation of the spirit of the law. That's Excerpt Record 43. I think the situation would be more similar to a patron of a bar. It's, you know, he's been there, he's had a few drinks, he decides it's time to leave. He grabs his coat, he says goodbye. He walks out the door with his keys in his hand, starts to take a step towards his vehicle, and he sees a police cruiser parked next to his vehicle. And he says, you know, it's probably not a good idea for me to drive with that police cruiser next to me because I've been drinking. He hands his keys to his friend, has the friend drive. That's essentially what happened here. That patron of the bar would have the intent to drive home, and coincidentally, he had too much to drink, so it would have been a DUI. But did he commit an attempted DUI by going out to his car to walk home and then seeing the police officer and handing the keys to a friend? I think that's the similar situation here. Because I think what is really crucial is that Mr. Bales stopped outside the facility. And at that point, he had done everything he intended to do. He said that, yes, we would have dropped him off in the parking lot, but the government, the court, Mr. Bales, everybody agreed that his purpose in traveling there wasn't to take marijuana onto the grounds of the facility. The purpose was to provide directions to Mr. Shah so he could surrender. Mr. Bales stopped outside the boundary, and that task was completed. Mr. Shah did indeed self-surrender, as he intended to do. If the officer wouldn't have waved him forward, Mr. Bales would have been on his way and he would have accomplished everything he intended to do. It was just sort of, if it hadn't have been for the presence of the police officer, he would have driven onto the grounds and he would have dropped Mr. Shah off, and he would have knowingly possessed the marijuana on the grounds at that point. But here, he requires the specific culpable intent, not just specific intent to do an act that would have resulted in a technical violation of the statute, but culpable intent. And Mr. Bales didn't have culpable intent. His only intent was to drop Mr. Shah off at the facility.  It wasn't a substantial step, because once he saw the officer and he knew he had a warrant, he said, stop. This is where I need to be. Mr. Shah can walk in from here. It's only 100 feet or so to the guardhouse where he would turn himself in. He had done everything he needed to do. So if he would have made further efforts after that, I think it would have been a substantial step. But here, because he stopped outside the boundary, having completed the task he intended to complete, I believe there wasn't a substantial step towards the completion of the offense. So to save some rebuttal time, you have about two minutes. Thank you. Thanks. We'll hear from the government. Good morning. May it please the Court. My name is James Church and I represent the United States. We are asking this Court to affirm the district court's finding and sentencing of the defendant. The district court properly sentenced the defendant and refused to impose a four-level reduction in his offense level because the defendant attempted to commit a State felony, which in this case was California Penal Code section 4573, which is knowingly being in possession of a controlled substance, in this case marijuana, while being on the grounds of a State jail, in this case the Rio Consumnes Correctional Center, also known as RCCC. As the Justice previously pointed out, the defendant always intended to go on to this property, and the district court, after hearing testimony from the defendant, did not believe and did not find his testimony credible that he simply forgot that he had marijuana on his person when he was asked if he had anything in his pocket. The California Penal Code 4573 is important to focus on because, as I said, the defendant, it doesn't require much other than the person knowingly being in possession of marijuana and being on the State jail property. And in this particular case, Mr. Bales testified, as the record reflects, that he intended to drop off his friend, Mr. Shaw, in the parking lot of the RCCC. It's uncontested that the parking lot is on RCCC property, and he was knowingly in possession of marijuana, based on the finding of the district court. The defendant took many substantial steps in completing this crime. He provided all the driving directions to the driver of the car. He positioned the car at the very entrance of the RCCC property. Somebody from within the car actually called out, is this RCCC? And furthermore, Mr. Bales testified that he assumed that the driver would drive on to RCCC property and drop off Mr. Shaw, and that if the sheriff had not actually been there, they still would have driven on to the RCCC property and dropped off his friend, and he would have still been in possession of marijuana while on State jail property. It is a really technical violation, isn't it? It is a technical violation. It's not much of a threat to the public safety. It is a technical violation, but that's why it is important to focus on what the actual statute reads, and it simply is to knowingly be in possession of marijuana while on State jail property. And in this particular case, Mr. Bales was that. And it's important that we focus on that particular point, that Mr. Bales knew he had been on the property, and there were substantial steps in furtherance of committing that crime. To respond to some of the arguments that were brought up by defense counsel, which was specifically that Mr. Bales could have just been free to leave and go on his way if the sheriff deputy had not stopped him or waved at him, is speculation. In fact, it's contrary to what Mr. Bales testified to. Mr. Bales testified to that he intended to drop off his friend on the parking lot, in the parking lot, which was on RCC property. And it would be speculative to say that he would have just been driven on after he dropped his friend off at the parking lot. An attempt is still punishable by more than a year. Is that correct? Yes, Your Honor. The State felony is an attempt, and it's the State felony in this case is the Penal Code, attempting to commit that crime, and the Penal Code, Section 4573, is a State felony. Does the Court have any other further questions? I don't believe that we do. I'll just summarize that. We're asking this Court to affirm the sentencing imposed by the district court, finding the defendant attempted to commit a State felony while on escape status. Thank you. Thank you, counsel. Mr. Kirsten, you have about two minutes, I think. Thank you, Your Honor. I think that the argument that it's speculation that Mr. Bales would have dropped off Mr. Shaw and not gone on to the facility is sort of a specious argument. Clearly, the purpose of going there wasn't to go into the parking lot. The purpose of going there was to deliver Mr. Shaw to the facility. They were at the facility. The roadway, it's only a hundred ways from the yards or feet from the gatehouse. He was right there. He could have easily walked in. Mr. Bales testified that he saw the guard. He said, stop right there. I don't want to go there. And I don't think that anybody, you know, disputed that. And I think that, again, the issue of the culpable intent, I know that one of the cases cited by the government was United States v. Scott, where officers were serving a search warrant. The phone rang. One of the officers picked up the phone. Someone made arrangements to buy drugs. They got an address, a false address intentionally given by the police. They asked how much money or how many drugs they could buy for the money. They called again to again get the right address. They showed up with the money to buy the drugs. There the culpable or the covert acts, what the court found, were basically calling to make arrangements, calling back twice to get the address and arriving with the money. Here what the government cites as covert acts by Mr. Bales were agreeing to show Mr. Shaw the way to the RCC, physically traveling to the RCC, providing directions to the RCC, and being in a car that stopped outside the boundary of the RCC. At that point, Mr. Shaw did everything he wanted to do. It wasn't a plan to drive onto the parking lot. The plan was to take Mr. Shaw to the facility, and the easiest way to do that was to let him off in the parking lot. When Mr. Bales saw the police officer or the sheriff, he stopped on the roadway outside the boundary because Mr. Shaw was there. There was no reason to go into the facility. Mr. Shaw was able to surrender. And again, none of the cases cited by either party in this is a situation where the purpose was a non-criminal purpose. There's arguments whether there was a, you know, substantial step, whether it was sufficiently developed. But in every one of those cases cited by both myself and the government, there was clear intent to commit a crime. Here the clear intent was to drop Mr. Shaw off at the facility. That would have been accomplished by driving out of the parking lot if not for the presence of the officer, but that wasn't necessary. We believe there was procedural error in the calculation of the guidelines, and we would ask for the matter to be remanded. Thank you, counsel. Thank you. I appreciate the arguments, and the case just argued is submitted.
judges: Fletcher B. , Canby, Graber